UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| HAIDER SALAH ABDULRAZZAK,<br><br>Petitioner,<br><br>vs.<br><br>BRENT FLUKE, WARDEN AT MIKE DURFEE STATE PRISON; AND ATTORNEY GENERAL FOR THE STATE OF SOUTH DAKOTA,<br><br>Respondents. | 4:20-CV-04154-RAL<br><br>OPINION AND ORDER DENYING PETITIONER'S MISCELLANEOUS MOTIONS AND DENYING A CERTIFICATE OF APPEALABILITY |

On October 21, 2020, Haider Salah Abdulrazzak, an inmate at Mike Durfee State Prison, filed a petition for writ of habeas corpus under 28 § U.S.C. 2254. Doc. 1. Respondent filed a motion to dismiss, Doc. 12, which this Court granted on July 1, 2021. Doc. 28. Abdulrazzak now moves for appointment of counsel and for reconsideration of the denial of his petition or, in the alternative, for a certificate of appealability. Docs. 30 and 31. Abdulrazzak also filed a motion asking this Court to clarify whether it would issue a formal opinion on his prior motion for reconsideration. Doc. 40.

I.     **Motion for Reconsideration**

Abdulrazzak moves for reconsideration of the denial of his petition under Federal Rule of Civil Procedure 59(e). Doc. 31. At the same time that he filed this motion, Abdulrazzak also appealed this Court's judgment to the Eighth Circuit Court of Appeals. Doc. 34. Under Federal Rule of Appellate Procedure 4(a)(4)(A), where a party files a timely Rule 59(e) motion to alter or amend a judgment, "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion[.]" Fed. R. App. P. 4(a)(4)(A).

1

A notice [of appeal] filed before the filing of one of the specified motions or after the filing of a motion but before the disposition of the motion is, in effect, suspended until the motion is disposed of, whereupon, the previously filed notice effectively places jurisdiction in the court of appeals.

Fed. R. App. P. 4(a)(4) advisory committee notes for the 1993 Amendment; see also Banister v. Davis, 140 S. Ct. 1698, 1703 (2020) (holding that "[t]he filing of a Rule 59(e) motion within the 28-day period suspends the finality of the original judgment for purposes of an appeal" (internal quotation omitted)). A party intending to raise the same issue laid out in the preemptive notice of appeal need not file a new notice of appeal following the disposition of the Rule 59(e) motion because the preemptive notice becomes effective upon disposition of the Rule 59(e) motion. Fed. R. App. P. 4(a)(4) advisory committee notes for the 1993 Amendment. Should the party intend to also challenge the disposition of the underlying Rule 59(e) motion on appeal, a new notice of appeal must be filed upon the entry of final judgment. See Catherine T. Struve, 16A Federal Practice and Procedure § 3950.4 (5th ed. 2021).

Rule 59(e) does not specify the standards for alteration or amendment. See Fed. R. Civ. P. 59(e). In the Eighth Circuit, a court must find a "manifest error[]" of law or fact in its ruling to alter or amend its judgment under Rule 59(e). See Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988) (internal quotation omitted). But Rule 59(e) motions may not be used to introduce evidence, tender new legal theories, or raise arguments that could have been offered or raised prior to the entry of judgment. Id. A party may also move to alter or amend judgment to present newly discovered evidence. Id.

### A. Timeliness

Under Rule 59(e), a motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). In Houston v. Lack, 487 U.S. 266, 276 (1988), the Supreme Court established the "prison mailbox rule," now codified in Federal Rule

of Appellate Procedure 4(c)(1), when it held that a "notice of appeal [is] filed at the time [the]

petitioner deliver[s] it to the prison authorities for forwarding to the court clerk." See also Rules

Governing § 2254 and 2255 Cases, Rule 4(d) ("A paper filed by an inmate confined in an

institution is timely if deposited in the institution's internal mailing system on or before the last

day for filing."). Federal Rule of Appellate Procedure 4(c)(1)(A) sets out additional rules

requiring the inmate to show the date of deposit and proof of prepaid postage. Fed. R. App. P.

4(c)(1)(A). The Eighth Circuit has extended the prison mailbox rule "to a motion which, under

[Federal Rule of Appellate Procedure] 4(a)(4), tolls the time for the filing of a notice of appeal."

United States v. Duke, 50 F.3d 571, 575 (8th Cir. 1995). A motion to amend or alter a judgment

under Rule 59 is such a motion. Fed. R. App. P. 4(a)(4)(A)(iv).

This Court entered judgment against Abdulrazzak on July 1, 2021. Under Rule 59(e) and

Duke, Abdulrazzak had until July 29, 2021, to deliver a motion to amend or alter a judgment to

the prison authorities for forwarding to the court clerk. Although his motion was not received by

this Court until August 2, it is dated July 28, 2021. Doc. 31 at 26. Further, the certificate of

service, also dated July 28, 2021, satisfies Rule 4(c)(1)(A) by substantially complying with the

requirements of 28 U.S.C. § 1746, noting that first-class postage was prepaid, and setting out the

date of deposit. Id. at 28. Thus, Abdulrazzak's motion was timely filed.

**B. Cause**

This Court found that Abdulrazzak procedurally defaulted on his claims when he failed to

timely file his appeal of his parole revocation and that he could not show cause for the default

necessary to overcome the procedural default. Doc. 28. Because Abdulrazzak could not establish

cause for the default, this Court did not rule on prejudice. Id. at 9. Abdulrazzak argued that he

submitted his parole revocation appeal to prison officials to be mailed on May 10, 2017. Id. at 3.

3

But the South Dakota Supreme Court found that his appeal never reached the Minnehaha County Clerk of Court until May 25, 2017, and was thus untimely. Id. at 4 (citing Abdulrazzak v. Bd. of Pardons and Paroles, 940 N.W.2d 672, 676 n.2 (S.D. 2020)). In dismissing his petition, this Court held that it was "bound by the state court's factual finding because it was based on a reasonable determination in light of the facts presented to the state court." Id. at 9 (citing Cole v. Roper, 783 F.3d 707, 711 (8th Cir. 2015)).

Cause is established when "the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Cause "must be something *external* to the petitioner, something that cannot fairly be attributed to him[.]" Coleman v. Thompson, 501 U.S. 722, 753 (1991). This Court's ruling was correct in that it is bound by the state court's factual findings: Abdulrazzak's petition arrived at the Minnehaha County Clerk of Court on May 25, 2017, and was thus untimely. But that does not preclude a finding of adequate cause for default. If Abdulrazzak can show that his appeal was untimely because of an external, objective factor that impeded his efforts to comply with the South Dakota procedural rule, he can show cause.

Abdulrazzak claims that he submitted his appeal to prison staff to be mailed on May 10, 2017. Doc. 31 at 2. To support this claim, he includes his notice of appeal, statement of issues, order for transcripts, verified motion and order to waive fees and costs and appoint counsel, application and order for court appointed counsel, application for waiver of fees, and certificate of service, all of which were signed and dated May 10, 2017. 4:19-cv-04075-RAL Doc. 1-1 at 10–20. Additionally, the verified motion and order to waive fees and costs and to appoint counsel, application and order for court appointed counsel, and application for waiver of fees were notarized on May 10, 2017. Id. at 12, 16, 18. He also points to later efforts to file an appeal

4

by his attorney, who claimed to have mailed these materials to the necessary parties on May 19, 2017, in an affidavit of mailing signed and notarized on May 19, 2017. Id. at 35–36. Last, Abdulrazzak provides an unverified prison mail log showing that he mailed something to the South Dakota Board of Pardons and Paroles (the "Parole Board") and the Second Judicial Circuit Court Administrator's Office on May 11, 2017. Doc. 21-1 at 11.

Abdulrazzak puts forth sufficient evidence to show that he tried to timely file his notice of appeal. Although this Court remains bound by the South Dakota Supreme Court's factual finding that the appeal arrived on May 25, 2017, Abdulrazzak may still show cause by providing evidence of nondelivery. In Ivy v. Caspari, 173 F.3d 1136, 1140–41 (8th Cir. 1999), the Eighth Circuit found cause to overcome procedural default when a prison inmate attempted to mail a properly executed motion on July 5, 1989, which never arrived at its destination, then mailed a second identical motion five days later under the mistaken belief that he had to mail multiple originals. The Eighth Circuit held,

> It is the fact of nondelivery of a prisoner's timely and properly mailed motion, not the reason for that nondelivery, that constitutes cause for the procedural default. Thus, it is enough for [petitioner] to establish, as he has, that the nondelivery of the first petition was not the result of any want of attention on his part to the requirements of the State's filing deadlines.

Id. at 1141. Abdulrazzak has shown that nondelivery of his appeal was not the result of any want of attention on his part. Thus, he can show cause for his procedural default.

### C. Prejudice

Abdulrazzak, however, cannot show prejudice to overcome the procedural default. For Abdulrazzak to show prejudice, he must establish that his claim has merit. To show prejudice, the habeas petitioner must show "not merely that the errors . . . created a *possibility* of prejudice,

but that they worked to his *actual* and substantial disadvantage[.]" <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982).

Abdulrazzak raises four grounds for habeas relief in his petition. Doc. 1 at 5–11. First, he alleges that participation in his parole program required him to provide incriminating statements in violation of his Fifth and Fourteenth Amendment rights. <u>Id.</u> at 5–7. Second, he alleges that his parole officer submitted incorrect allegations and that he was not provided sufficient notice of the grounds for his parole revocation in violation of his Fifth and Fourteenth Amendment rights. <u>Id.</u> at 7–8. Third, he alleges that he was not provided sufficient notice that violation of his parole conditions would prompt revocation of his parole. <u>Id.</u> at 8–10. Fourth, he alleges that his parole conditions were improperly modified to add treatment requirements after he was sentenced. <u>Id.</u> at 10–11.

### 1.  Violation of Right to be Free from Self-Incrimination

Abdulrazzak claims that certain conditions of his parole program required him to provide statements that would be self-incriminating. <u>Id.</u> at 5. Specifically, he argues that because he testified at his trial under oath that he did not commit the crimes for which he was convicted, admitting to those crimes in his parole program would subject him to potential perjury charges. Doc. 19 at 27.

Courts have ruled on this issue in a § 1983 context. In <u>McKune v. Lile</u>, 536 U.S. 24, 30–31, 48 (2002), the Supreme Court held that prison officials did not violate an inmate's Fifth Amendment rights when they imposed several punishments, such as reduction of visitation and work opportunities, removal of a personal television from the inmate's cell, and transfer of the petitioner to a maximum-security unit because the inmate refused to admit guilt, claiming potential perjury liability, as part of a Sexual Abuse Training Program (SATP). Importantly, the

6

Court noted that "respondent's decision not to participate in the Kansas SATP did not extend his term of incarceration. Nor did his decision affect his eligibility for good-time credits or parole." Id. at 38. The Eighth Circuit has considered McKune's applicability to claims of parole revocation in violation of Fifth Amendment rights, stating that such claims "raise[] potentially significant constitutional issues[.]" Bradford v. Mo. Dep't of Corr., 46 F. App'x 857, 858 (8th Cir. 2002) (per curiam).[1]

If revocation of Abdulrazzak's parole were entirely based on his refusal to self-incriminate in violation of his Fifth Amendment rights as part of his parole program, he might have a claim under McKune. But parole revocation resulted from Abdulrazzak failing to comply with several portions of his parole program, some of which did not require self-incrimination. See 4:19-cv-04075-RAL Doc. 1-1 at 55. Abdulrazzak was found to have violated parole conditions SA10 and SA13E.[2] Id. He was asked to complete a list of ten reasons why someone in his situation—convicted of possession of child pornography—might deny his or her offense. Id. at 73. Instead, he came up with five reasons of his own and copied five from the book provided to him. Id. An inspection of a smartphone he had showed that he has been searching for the Sports Illustrated Swimsuit Edition. Id. at 2. He was not supposed to have a smartphone or internet access. Id. He also did not comply with a polygraph test on October 19, 2016, and failed to follow directions for another polygraph test on October 24, 2016. Id. Further, he left his housing unit after being told not to do so following a failed polygraph test. Id. at 55. Thus, he

---

[1] Bradford is an unpublished opinion. Pursuant to Eighth Circuit Rule 28A, it has no precedential value. It is cited here to show that the Eighth Circuit has contemplated this specific application of McKune.

[2] SA10 reads, "I will comply with all instructions in matters affecting my supervision, and cooperate by promptly and truthfully answering inquiries directed to me by a Parole agent." Doc. 13-2 at 4. SA13E reads, "I will participate, cooperate, and complete any programs as directed." Id. at 5.

cannot show prejudice stemming from his refusal to self-incriminate because refusing to self-incriminate was not the only or even main violation of his parole conditions.

### 2. Incorrect Allegations and Insufficient Notice of Violations

Abdulrazzak argues that an allegation in his parole revocation report was incorrect and not supported by enough evidence to provide him with sufficient notice to properly defend himself. Doc. 1 at 7. He claims that this lack of notice constitutes a violation of his due process rights. Id. Specifically, he argues that his parole officer was incorrect to claim that he left his unit without permission and that because the parole revocation report did not provide more detail as to what happened, it did not provide him with sufficient notice to defend himself against the allegation that he left without permission. Id.

Abdulrazzak provides no evidence and makes no claims that he did not leave his unit without permission other than to argue that the records do not support this conclusion. Id. He correctly notes that the adult case note summary from his parole officer makes no reference to his leaving the unit without permission. Id.; see 4:19-cv-04075-RAL Doc. 1-1 at 72–73. But the probable cause hearing findings and the violation report, both of which were provided to Abdulrazzak before his revocation hearing, mention his leaving the unit without permission. 4:19-cv-04075-RAL Doc. 1-1 at 55; Doc. 13-2 at 2. Without any evidence provided by Abdulrazzak to the contrary, this Court is in no position to second guess the factual finding of the Parole Board that Abdulrazzak left his unit without permission.

Beyond challenging the facts of his revocation, Abdulrazzak also claims that he was provided with insufficient notice of those facts. Doc. 1 at 7. He argues that he was provided no information as to his leaving the unit without permission and explains that he only learned the date this occurred over a year after his revocation hearing. Id. The Supreme Court set out the

8

standard for required notice in a parole revocation in <u>Morrisey v. Brewer,</u> 408 U.S. 471, 489

(1972):

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee
> of evidence against him; (c) opportunity to be heard in person and to present
> witnesses and documentary evidence; (d) the right to confront and cross-examine
> adverse witnesses (unless the hearing officer specifically finds good cause for not
> allowing confrontation); (e) a 'neutral and detached' hearing body such as a
> traditional parole board, members of which need not be judicial officers or lawyers;
> and (f) a written statement by the factfinders as to the evidence relied on and reasons
> for revoking parole.

"For notice to be effective, it need only assure that the defendant understands the nature of the

alleged violation." <u>United States v. Sistrunk</u>, 612 F.3d 988, 992 (8th Cir. 2010). Respondent

contends that, under <u>Morrisey</u>, "[p]arole revocation proceedings are subject only to 'minimum

requirements of due process.'" Doc. 13 at 13–14 (quoting <u>Morrisey</u>, 408 U.S. at 489). <u>Morrisey</u>

did not declare the amount of due process afforded to parole revocations to be a minimum;

rather, it determined the minimum requirements *of* due process for parole revocations, so

Respondent misstates the rule in <u>Morrisey</u>. <u>See Morrisey</u>, 408 at 488–89 ("Our task is limited to

deciding the minimum requirements of due process."). The standard is the six-part test in

<u>Morrisey</u>.

Abdulrazzak fails to claim that any element of the six-part <u>Morrisey</u> test was not met. He

alleges that he did not receive enough information, essentially arguing that the evidence against

him was not disclosed or that he did not receive a written statement by the factfinders as to the

evidence relied on. <u>See</u> Doc. 1 at 7. But the probable cause hearing findings laid out that he "left

Unit C/CTP after receiving a verbal directive not to leave Unit C/CTP by Agent Werner

following a failed polygraph." 4:19-cv-04075-RAL Doc. 1-1 at 55. While this may not have

provided Abdulrazzak with an exact date, it provided him with enough information to

"understand[] the nature of the alleged violation." <u>Sistrunk</u>, 612 F.3d at 992. Further, his parole

9

agent explained that he had undergone four polygraphs at the time revocation was recommended, significantly narrowing the possible dates referred to by the allegation. See Doc. 13-2 at 3. Thus, Abdulrazzak was provided with sufficient notice to properly defend himself.

### 3. Insufficient Notice of Consequences of Violations of Parole and Improper Revocation of Suspended Sentence

Abdulrazzak argues that he was not properly informed that violation of his parole conditions would result in a reimposed sentence. Doc. 1 at 8. He also argues that the Parole Board imposed conditions not authorized by the sentencing court and that it lacked the authority to do so. Id.

Both arguments are without merit. Although Abdulrazzak correctly notes that Box F, reading "[t]he inmate was given notice of the conditions of suspended sentence prior to violating the same[,]" was not initialed on the revocation hearing findings of fact, 4:19-cv-04075-RAL Doc. 1-1 at 8, condition SA15 of the parole standard supervision agreement, signed by Abdulrazzak, reads in part, "I understand and agree that any parole agent has the authority to place me in custody any time and begin revocation proceedings if I am alleged to be in violation of any conditions of this agreement, and that my supervision may be revoked." Doc. 13-2 at 5. This is sufficient notice of the consequences of violating parole conditions.

Abdulrazzak next cites Kelley v. S.D. Bd. of Pardons and Paroles, 869 N.W.2d 447 (S.D. 2015), believing it to support his argument that the Parole Board could not impose conditions beyond those imposed at his initial sentencing. Doc. 19 at 36-37. But in Kelley, the Supreme Court of South Dakota stated the opposite:

> However, absent limitations imposed by the sentencing court, "[w]e have recognized that the Board of Pardons and Paroles may impose conditions on a defendant's suspended sentence in addition to those imposed by the sentencing court so long as the additional conditions are reasonable and *not inconsistent* with those mandated by the court."

Kelley, 869 N.W. at 449 (alterations in original) (quoting Mann v. S.D. Bd. of Pardons and Paroles, 861 N.W.2d 511, 515 (S.D. 2015)). Abdulrazzak argues that the Parole Board's authority to revoke his parole and reimpose his suspended sentence stems from SDCL § 23A-27-19 and that this statute was amended on July 1, 2016. Doc. 19 at 37. According to Abdulrazzak, the Parole Board was bound to follow the sentencing court's conditions prior to the July 1, 2016, amendment, and thus allowing the Parole Board to enforce conditions of parole not included in his 2011 sentence is a violation of the ex post facto clause of the constitution. Id. But Kelley was decided before the July 1, 2016, amendment and explained that the Parole Board had the authority to enforce conditions of parole not included in the original sentence so long as the additional conditions were reasonable and not inconsistent with the sentence imposed by the court. Kelley, 869 N.W. at 449.

Abdulrazzak claims that parole condition SA13E, which required him to "participate, cooperate, and complete any programs as directed," was unreasonable because it was unconstitutionally vague. Doc. 19 at 39. He argues that the condition "did not plainly put [him] on notice that he will participate in the STOP treatment and he would undergo pre-release psychosexual evaluation." Id. In Austad v. S.D. Bd. of Pardons and Paroles, 719 N.W.2d 760, 768–69 (S.D. 2006), the South Dakota Supreme Court ruled on the reasonableness of two challenged parole conditions. In Austad, one of the challenged parole conditions read, "I understand that violation of any institutional rule before my actual release from the institution may be considered a violation of my supervision agreement." 719 N.W.2d at 768. The court ruled that the condition, which imposed the larger set of institutional rules of the South Dakota Department of Corrections, was not unreasonable. Id. at 768–69. Here, condition SA13E is not unreasonable and not unconstitutionally vague for similar reasons. SA13E need not specify every

program that Abdulrazzak would be required to complete; it was enough to put Abdulrazzak on notice that he would have to complete programs as directed.

The additional parole conditions were not inconsistent with the conditions imposed by the sentencing court. The sentencing court's conditions restricted Abdulrazzak, having been convicted of possessing child pornography, from "be[ing] in the presence of anyone under the age of fifteen (15) without another adult (21 years or older) present for a period of ten (10) years after release[] from custody." Doc. 13-1 at 2–3. Although some of the parole conditions imposed restrictions on Abdulrazzak's ability to contact, socialize with, date, or otherwise interact with minors, these restrictions supplemented and did not contradict those of the sentencing court. Doc. 13-2 at 5. Thus, because the additional conditions were reasonable and not inconsistent with those imposed by the sentencing court, Abdulrazzak's claim that the revocation of his parole was improper because the Parole Board imposed additional conditions is without merit.

### 4. Improper Modification of Parole Agreement

Abdulrazzak claims that the Parole Board modified his parole agreement in April 2016 to unconstitutionally impose harsher conditions. Doc. 1 at 10. Specifically, he argues that he was not required to undergo sex offender treatment in his initial Individual Program Directive (IPD) or parole agreement in 2014, but he was required to do so in his subsequent parole agreement in 2016. Doc. 19 at 38. He claims that his initial lack of sex offender treatment was a determination by the Department of Corrections that such treatment was unnecessary and that this determination was impermissibly reversed by the Parole Board. Id.

Abdulrazzak argues that the Parole Board lacked the power to alter his IPD or parole agreement. Id. But he provides no support for his claim that this alteration was done by the Parole Board or by an agent of the Parole Board. Although he is correct that his parole agent,

12

Dusti Werner, stated in an affidavit that he needed to have a pre-release psychosexual assessment, this was not a decision made by Dusti Werner. See 4:17-cv-04058-KES Doc. 82-15 at 1. Instead, Werner was quoting from an e-mail she received from Brenna Carlson. Id. Carlson was, at the time, an employee of the South Dakota Department of Corrections. 4:17-cv-04058-KES Doc. 84 at 1. Abdulrazzak makes no showing that Carlson was acting under Parole Board authority and not Department of Corrections authority. Further, Abdulrazzak agreed to an Individualized Supervision Agreement as part of the South Dakota Department of Corrections Sex Offender Management Program providing that "failure to comply with any portion of this contract may be grounds for termination from the individualized supervision program and may result in a violation of [his] parole." 4:17-cv-04058-KES Doc. 82-2. His argument that these conditions were imposed by the Parole Board holds no merit.

Even if Abdulrazzak were correct as to which body imposed these conditions, South Dakota law contemplates parole modifications by the Parole Board. See SDCL § 24-15A-31;[3] SDCL § 24-15-27.[4] Abdulrazzak argues that Werner violated these statutes by failing to obtain prior approval before imposing new parole conditions. Doc. 19 at 42. However, as stated above, Werner did not impose a pre-release psychosexual assessment, but was quoting an e-mail from the Department of Corrections.

---

[3] "If the parolee or the parole agent wish to modify the terms, conditions, restrictions, and requirements contained within a parolee's parole agreement, the request shall be forwarded to the executive director of the board for approval."

[4] "If the parolee, the Department of Corrections, or the agent wish to modify board-ordered terms, conditions, restrictions, and requirements contained within a parolee's parole agreement, the request shall be forwarded to the executive director for submission to a panel or board. No board-ordered terms, conditions, restrictions, or requirements in a parole agreement may be modified without the concurrence of two board members."

Abdulrazzak cites South Dakota v. Blakney, 851 N.W.2d 195 (S.D. 2014), and United States v. Kent, 209 F.3d 1073 (8th Cir. 2000), for the proposition that "treatment programs . . . recommended by a non-judicial officer must be approved by the court before becoming effective." Blakney, 851 N.W.2d at 199. But Blakney and Kent pertain to probation, where probation officers imposed treatment program conditions beyond those ordered by the courts. Blakney, 851 N.W.2d at 199–200, Kent, 209 F.3d at 1078–79. Probation is a punishment, the conditions of which must be court-determined. See Kent, 209 F.3d at 1078 ("[T]he imposition of a sentence, including any terms for probation or supervised release, is a core judicial function." (quoting United States v. Johnson, 48 F.3d 806, 808 (4th Cir. 1995)). Parole in South Dakota, on the other hand, involves a parolee like Abdulrazzak entering into a parole agreement. In that parole agreement, Abdulrazzak not only acknowledged that he was subject to its conditions, but also agreed to those conditions. Blakney and Kent do not support Abdulrazzak's claim.

Further, Respondent notes that Abdulrazzak could have challenged the additional conditions of his parole once they were imposed. Doc. 13 at 21 (citing SDCL § 24-15A-40). These conditions were imposed in April 2016. Doc. 13-2 at 4-5. Respondent is correct that the time to appeal an administrative ruling such as conditions of parole is 30 days under SDCL § 1-26-31. Abdulrazzak did not challenge these conditions until after his parole was revoked in March 2017, well after the 30-day deadline. See 4:19-cv-04075-RAL Doc. 1-1 at 7–9. Thus, Abdulrazzak failed to exhaust claims challenging his parole conditions, and because this failure to exhaust occurred well before his revocation hearing, any cause to excuse default connected to his untimely mailed appeal does not excuse his failure to challenge his parole conditions.

14

Abdulrazzak's parole agreement was not improperly modified, and Abdulrazzak failed to timely challenge the modifications to his parole agreement. Abdulrazzak's claims are without merit.

## II.     Motion for Certificate of Appealability

In the alternative, Abdulrazzak seeks a certificate of appealability. Doc. 31. "[A] state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition." Miller-El v. Cockrell, 537 U.S. 322, 335 (2003) (citing 28 U.S.C. § 2253). "Before an appeal may be entertained, a prisoner who was denied habeas relief in the district court must first seek and obtain a [certificate of appealability] from a circuit justice or judge." Id. at 335–36. A certificate may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" demonstrates that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This Court finds that Abdulrazzak can show cause to overcome procedural default but cannot show prejudice. Abdulrazzak has not made a substantial showing that his constitutional rights were denied, so no certificate of appealability will issue. See 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.").

## III.    Motion for Appointment of Counsel

Abdulrazzak also moves for the appointment of counsel. Doc. 30. "This court, however, cannot appoint counsel to litigants before the Eighth Circuit Court of Appeals unless the Court of Appeals requests or directs this court to rule on the matter." Smith v. United States Marshals, 2016 U.S. Dist. LEXIS 172573, at *3 (D.S.D. Dec. 12, 2016). Thus, this Court cannot rule on

Abdulrazzak's motion for the appointment of appellate counsel without direction from the Eighth Circuit and will deny that motion at this time.

Therefore, it is hereby

ORDERED that Abdulrazzak's motion for reconsideration, Doc. 31, is denied. It is further

ORDERED that Abdulrazzak's motion for a certificate of appealability, Doc. 31, is denied. It is further

ORDERED that Abdulrazzak's motion for appointment of counsel, Doc. 30, is denied at this time. It is finally

ORDERED that Abdulrazzak's motion to clarify, Doc. 40, is denied as moot.

DATED September 28ᵗʰ, 2021.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

16